IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PASKENTA ENTERPRISES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ALAN COTTLE and KNEE CENTERS MANAGEMENT, LLC,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS**<br><br>Case No. 1:17-cv-00033-JNP-BCW<br><br>District Judge Jill N. Parrish |

Before the court is Alan Cottle and Knee Centers Management, LLC's (collectively, defendants) motion to dismiss Paskenta Enterprises Corporation's (Paskenta) complaint. [Docket 14]. The court DENIES the motion.

## BACKGROUND

Cottle was the sole member and manager of Knee Centers Management. Paskenta is a corporation owned by the Paskenta Band of Nomlaki Indians (Tribe). John and Ines Crosby occupied leadership roles in the Tribe. The Crosbys agreed that Paskenta would go into business with Knee Centers Management in order to open and operate a number of orthopedic clinics.

Paskenta and Knee Centers Management formed Emere Holding, LLC,[1] with Paskenta as a member with a 25% ownership stake and Knee Centers Management as the managing member

---

[1] The holding company was initially named Knee Centers Holding Company, LLC. The name was later changed to Emere Holding, LLC.

with a 75% ownership stake. Emere opened a bank account to hold Paskenta's $5 million contribution to the enterprise. Emere also created a wholly-owned subsidiary, Knee Centers Operating Company, LLC, which operated the orthopedic clinics and controlled the parties' efforts to open new clinics nationwide. Money transfers from the Emere holding account to Knee Centers Operating Company required two signatures, one from Cottle and one from either John or Ines Crosby.

Knee Centers Operating Company spent the parties' initial investment. Cottle approached the Crosbys and proposed that Paskenta contribute additional funds in exchange for a greater ownership stake in Emere. The Crosbys caused Paskenta to contribute an additional $2 million to Emere's holding account. The Crosbys and Cottle subsequently transferred about $800,000 from the holding account to Knee Centers Operating Company.

In April 2014, the Tribe removed the Crosbys from their leadership positions. The Tribe alleges that it discovered evidence that the Crosbys had stolen tens of millions of dollars from Paskenta and the Tribe. The Tribe placed a freeze on all of Paskenta's bank accounts to prevent the Crosbys from diverting any more money. As a result, Knee Centers Management was unable to withdraw any of the remaining $1.2 million in the holding account.

Knee Centers Management "threatened" Paskenta in an attempt to convince it to release the funds in the holding account.[2] On May 23, 2014, Cottle sent a letter to Paskenta asserting a right to the funds and requesting that they be released. Cottle stated that the funds were desperately needed to keep the enterprise afloat and that without them Paskenta's investment in

---

[2] In the complaint, Paskenta does not specify how Knee Centers Management threatened it.

Emere could become worthless. Cottle also made four representations in the letter that Paskenta alleges were fraudulent:

- "All of our professional (medical and executive) talent has signed up to take this new company to 40-50 clinics over a 48 month period with an estimated $400MM-500MM valuation."
- A clinic was scheduled to open in Salt Lake City on July 7, 2014 and another clinic was scheduled to open in Boca Raton on July 14, 2014.
- "The list is long of planned expenses to move the entire company to the new [business] model during the spring and summer of this year. We are on track, we are on budget and we cannot have any stop or interference with the cash that was paid to us last year in exchange for more Paskenta ownership."
- "And to be clear not one dollar (or any amount of any type of remuneration) has ever been paid to Mr. Crosby or Ines Crosby or any of their entities (if they have any—who knows—I sure don't) by any entity I own or control (which is all of the entities we have discussed)."

On May 30, 2014 Knee Centers Management and Paskenta entered into an "Agreement for Release of Funds" (Funds Agreement), in which Paskenta agreed to release the money that remained in the holding account. The Funds Agreement contained the following statement: "No party is relying upon any statement or representation not specified in this Agreement as an inducement or basis for entering into this Agreement." On June 11, 2014, Knee Centers Management transferred all remaining funds in the Emere holding account to Knee Centers Operating Company.

3

The orthopedic clinic enterprise subsequently failed. Without consulting or notifying Paskenta, the defendants unilaterally dissolved Emere, Knee Centers Management, and Knee Centers Operating Company in July 2015.

Paskenta sued Cottle and Knee Centers Management, asserting four causes of action. Paskenta alleges that the representations made in the May 23, 2014 letter constituted either fraudulent inducement or negligent misrepresentations that caused it to enter into the Funds Agreement. Paskenta further asserts that Knee Centers Management breached its fiduciary duties as the managing member of Emere by making false statements in the May 23 letter and by failing to provide any notice, distribution, or accounting when it dissolved Emere. Finally, Paskenta alleges that Cottle aided and abetted Knee Centers Management's breaches of fiduciary duty.

## CHOICE OF LAW AND LEGAL STANDARDS

A federal court exercising diversity or supplemental jurisdiction "applies the substantive law, including choice of law rules, of the forum state." *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (citation omitted). Utah applies "the 'most significant relationship' approach as described in the Restatement (Second) of Conflict of Laws in determining which state's laws should apply to a given circumstance." *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002).

Paskenta, a corporation with its principal place of business in California, asserts state-law claims against Cottle, an individual domiciled in Utah, and Knee Centers Management, a Utah LLC. Neither party, however, conducted a choice of law analysis to determine whether the law of California, Utah, or another state should be applied to Paskenta's claims. Moreover, it is difficult

4

for the court to conduct a choice of law analysis on its own because the complaint does not reveal the location where the representations in May 23 letter were made or received or where actions in reliance upon these representations occurred. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148 (1971). Because the parties consistently cite Utah law in their briefing on the motion to dismiss, they appear to concede that Utah law controls. The court, therefore, applies Utah's substantive law for the purposes of this motion.

But this court applies federal law when determining whether dismissal of a cause of action is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007). Under Rule 12(b)(6), a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## ANALYSIS

### I. FRAUDULENT INDUCEMENT AND NEGLIGENT MISREPRESENTATION

A fraudulent inducement claim requires a plaintiff to establish:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably

5

and in ignorance of its falsity, (7) did in fact rely upon it (8) and
was thereby induced to act (9) to that party's injury and damage.

*Keith v. Mountain Resorts Dev., LLC*, 337 P.3d 213, 225–26 (Utah 2014). Additionally, Utah law on the tort of negligent misrepresentation provides that

> a party injured by reasonable reliance upon a second party's careless or negligent misrepresentation of a material fact may recover damages resulting from that injury when the second party had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should have reasonably foreseen that the injured party was likely to rely upon the fact.

*Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.2d 55, 59 (Utah 1986). Thus both fraudulent inducement and negligent representation claims require (1) reasonable reliance upon (2) a representation of existing material fact.

The defendants argue that Paskenta cannot state a claim for either fraudulent inducement or negligent misrepresentation because these two essential elements of both claims cannot be proven. They also argue that the complaint does not state a claim because it does not allege that the four representations made in the May 23 letter were false.

    A. *Reasonable Reliance*

        1) The non-reliance provision

The defendants assert that Paskenta could not reasonably rely upon any fraudulent or negligent representations of fact made before the funding agreement was signed. They point to the integration clause in the agreement, which also provides: "No party is relying upon any statement or representation not specified in this Agreement as an inducement or basis for entering into this Agreement." The defendants cite a federal district court case applying Colorado and Indiana law and argue that this contractual provision renders any reliance upon pre-contract

6

representations unreasonable as a matter of law. *See Steak n Shake Enterprises, Inc. v. Globex Co., LLC*, 110 F. Supp. 3d 1057, 1083 (D. Colo. 2015), *aff'd*, 659 F. App'x 506 (10th Cir. 2016) ("[I]t is simply unreasonable to continue to rely on representations after stating in writing that you are not so relying." (citation omitted)). The court must determine whether this proposition holds true under Utah law.

"While the question of reasonable reliance is usually a matter within the province of the jury, there are instances where courts may conclude that as a matter of law, there was no reasonable reliance." *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1067 (Utah 1996) (citation omitted). In *Gold Standard*, for example, the Utah Supreme Court assumed that the defendant made a fraudulent oral promise. *Id.* Afterward, the defendant delivered four separate letters to the plaintiff that directly contradicted the oral representation. *Id.* at 1067–68. The court held that, as a matter of law, the plaintiff could not reasonably rely upon the oral promise "in light of the numerous writings denying such a promise." *Id.* at 1068.

This case presents a different fact pattern. Here, Paskenta does not allege that it relied upon the representations made in the May 23 letter after it signed Funds Agreement containing the disclaimer. Paskenta asserts that it relied upon the representations in the letter when it decided to sign the May 30 Funds Agreement. Because Paskenta's reliance necessarily preceded the signing of the contract containing the disclaimer, the question here is whether parties may contractually nullify a fraudulent inducement or negligent misrepresentation claim by placing a provision in the contract that states that the parties did not rely upon any pre-contract representations when they entered into the contract.

The Utah Court of Appeals has directly addressed this question. In *Reperex Inc. v. Child, Van Wagoner & Bradshaw*, the buyer of a business alleged that a broker either fraudulently or

7

negligently misrepresented the financial strength of the business. 392 P.3d 905, 908 (Utah Ct. App. 2017) *cert. granted sub nom. Reperex Inc. v. Coldwell Banker*, 400 P.3d 1044 (Utah 2017). The buyer signed a contract with the broker in connection with the purchase of the business that contained the following provision:

> Buyer hereby acknowledges that Buyer is relying on its own inspection of the involved business and the representations of the Seller and not of [the Broker] and/or any of its agents or employees with regards to the prior operating history of the business, the value of the assets being purchased and all other material facts of Seller in completing the transaction as evidenced by the Agreement for Purchase and Sale together with its attachments.

*Id.* at 909 (alteration in original). The Utah Court of Appeals held that this disclaimer did not negate the buyer's fraudulent inducement and negligent misrepresentation claims as a matter of law because the buyer could potentially prove that the non-reliance clause itself had also been "procured by fraud or integral to a scheme to defraud."[3] *Id.* at 912; *see also Larsen v. Exclusive Cars, Inc*, 97 P.3d 714, 716 (Utah Ct. App. 2004) (holding that a non-reliance clause did not establish that reliance upon pre-contract statements was unreasonable as a matter of law); *TS 1 P'ship v. Allred*, 877 P.2d 156, 159 (Utah Ct. App. 1994) (holding that contract language that contradicted a pre-contract representation did not establish that reliance upon the representation was unreasonable as a matter of law); *Preventive Energy Sols., LLC v. nCap Ventures 5 LLC*, No. 2:16-cv-809-PMW, 2017 WL 87028, at *5 (D. Utah Jan. 10, 2017) (ruling that a boilerplate

---

[3] On July 27, 2017, the Utah Supreme Court agreed to review the court of appeals' *Reprex* opinion. *Reperex Inc. v. Coldwell Banker*, 400 P.3d 1044 (Utah 2017). Presumably, therefore, the Utah Supreme Court will definitively resolve the question of whether a non-reliance clause may defeat a fraudulent inducement or negligent misrepresentation claim in the near future.

non-reliance clause did not automatically render reliance upon pre-contract representations unreasonable under Utah law).

This holding of the court of appeals is consistent with Utah Supreme Court precedent. That court has held that a contractual release cannot defeat a fraud claim if the release itself was induced by fraud or is integral to a scheme to defraud. *Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 453 (Utah 1993) ("[A] release will be voidable if it was an integral part of a scheme to defraud."); *Lamb v. Bangart*, 525 P.2d 602, 608 (Utah 1974) ("[A] contract clause limiting liability will not be applied in a fraud action. The law does not permit a covenant of immunity which will protect a person against his own fraud on the ground of public policy. A contract limitation on damages or remedies is valid only in the absence of allegations or proof of fraud."). Since parties may not directly defeat a fraudulent inducement claim by including a release in the contract, they likewise may not do so indirectly by including a non-reliance provision, which would necessarily negate an essential element of any fraud or negligent misrepresentation claim. Like a release, a non-reliance provision can be procured by the same fraud or misrepresentation that induced the contract itself.

This court, therefore, concludes that the non-reliance provision in the Funds Agreement does not render Paskenta's reliance upon pre-contract representations unreasonable as a matter of law.

2) The reasonableness of Paskenta's reliance

The defendants also argue that two of the representations Cottle made in the May 23 letter were so inherently unbelievable that Paskenta could not have reasonably relied upon them. They assert that no reasonable person (or business entity) would have relied upon the

9

representations that (1) Knee Centers Management's professional talent "has signed up to take this new company to 40-50 clinics over a 48 month period with an estimated $400MM-500MM valuation" and (2) "[w]e are on track, we are on budget." The defendants point to the allegations in the complaint that they "ran through [Paskenta's] initial $5 million investment in just over a year, with little to show for it" and argue that Paskenta could not have reasonably relied upon representations about future valuations or that the enterprise was on track and on budget to transition to a new business model. [Complaint ¶ 27]. In other words, Paskenta should have known that the venture was doomed to fail based upon past performance and thus could not have reasonably relied on these statements.

The defendants also note that the complaint alleges that when they approached the Crosbys for more money, they "represented that another $3 million was needed from Paskenta." [Complaint ¶ 32]. The defendants argue that Paskenta could not reasonably rely upon the business projections or the representations about being on budget in the May 23 letter because Paskenta should have known that an additional investment of only $2 million would not be sufficient.

As noted above, "the question of reasonable reliance is usually a matter within the province of the jury." *Gold Standard*, 915 P.2d at 1067 (citation omitted). While the defendants have presented plausible arguments as to why Paskenta should not have relied upon the prediction about future valuations and the statement about being on track to successfully transition to a more profitable business model, the court cannot say that any reliance was unreasonable as a matter of law.

### B. Representation of Existing Material Fact

The defendants also argue that two of the representations contained in the May 23 letter cannot support a fraudulent inducement or negligent misrepresentation claim because they are not representations of existing material fact. The letter states that all of Emere's medical and executive "talent has signed up to take this new company to 40-50 clinics over a 48 month period with an estimated $400MM-500MM valuation." The letter also states that two clinics would open in July 2014: one in Salt Lake City, another in Boca Raton. The defendants argue that these two representations constitute opinions about future events and future valuations that may not support the requirement that a representation be of an existing material fact.

It is true that a good-faith expression of an opinion regarding future events is not a presently existing material fact that can sustain a fraud claim. *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1230 (10th Cir. 1999) (applying Colorado law to conclude that "[a]s a general rule, actionable fraud cannot consist of unfulfilled predictions or erroneous conjectures as to future events. However, exceptions exist . . . . [*A*] *promise concerning a future act, when coupled with a present intention not to fulfill the promise, can be a misrepresentation which is actionable as fraud.*" (citation omitted)). But under Utah law, "a promise of future performance, when made with a present intent not to perform and made to induce a party to act in reliance on that promise, constitutes actionable deceit and fraud." *Von Hake v. Thomas*, 705 P.2d 766, 770 (Utah 1985); *accord Webster v. JP Morgan Chase Bank, NA*, 290 P.3d 930, 936 (Utah Ct. App. 2012) ("[A] promise of future performance can sustain a claim of fraud when 'at the time of the representation, [the party making the representation] did not intend to perform the promise and made the representation for the purpose of deceiving the promisee.'" (second alteration in

11

original) (citation omitted)). Thus predictions about future valuations and clinic openings can support a fraud claim if Cottle did not have a present intent to bring about the predicted events or a present belief that the predicted events could happen. Thus the court may not dismiss the fraudulent inducement and negligent misrepresentations claims related to the two statements noted above.

C. *Sufficiency of the Allegations in the Complaint*

The defendants also argue that the allegations of the complaint do not state a claim for fraudulent inducement or negligent misrepresentation. They contend that the facts alleged do not support the conclusion that any of the four representations made in the May 23 letter were false.

First, the defendants argue that the facts alleged in the complaint do not state a claim based upon Cottle's representation that "[a]ll of our professional (medical and executive) talent has signed up to take this new company to 40-50 clinics over a 48 month period with an estimated $400MM-500MM valuation." Within the context of the May 23 letter, this statement can be fairly read to represent that Cottle and his senior staff had committed to reach a total of 40 to 50 clinics and a $400 million to $500 million valuation and that these goals were achievable. The defendants contend that Paskenta did not allege facts demonstrating that Cottle knew that this statement was false when he made it. But the complaint clearly alleges that this representation was "knowingly false" and that Cottle "knew that Emere would never be profitable." [Complaint ¶¶ 51, 71]. These allegations are sufficient to show that this representation was false.

Second, the defendants argue that Paskenta failed to allege that Cottle's assertion that "[w]e are on track, we are on budget" was false when he made it. The complaint, however, alleges that Cottle knew that "the company was far from on track or on budget" and that "Emere

12

would never be profitable." [Complaint ¶¶ 52, 71]. Indeed, the allegation that the defendants shuttered Emere not long after Paskenta released the remaining money in the holding account suggests that the enterprise was not on track to transition to a profitable business model. If proven, the factual claims made in the complaint are sufficient to show that this representation was false.

Finally, the defendants argue that the complaint does not allege that the two remaining representations—that two clinics were scheduled to open in July 2014 and that Cottle had not transferred any money to the Crosbys—were false. The complaint lists these two representations and then alleges that they "were known by Defendants to be false." [Complaint ¶¶ 77–78]. Viewing this allegation in the light most favorable to Paskenta, the complaint necessarily asserts that these two representations were untrue. The defendants could only know that the statements were false if they were in fact false.

Therefore, the complaint alleges that the four representations made in the May 23 letter were false. The allegations of the complaint are sufficient to state a claim.

## II. THE ECONOMIC LOSS RULE

The defendants argue that the negligent misrepresentation claim must also be dismissed because Utah's economic loss rule bars this claim. Under Utah law, "[t]he economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." *Reighard v. Yates*, 285 P.3d 1168, 1176 (Utah 2012) (citation omitted). "Thus, 'when a conflict arises between parties to a contract regarding the subject matter of that contract, "the contractual relationship controls, and parties are not permitted to assert actions in tort in an

13

attempt to circumvent the bargain they agreed upon.'"'" *Id.* (citation omitted). "Whether the economic loss rule applies depends on 'whether a duty exists independent of any contractual obligations between the parties.'" *Id.* (citation omitted).

This court has certified a question to the Utah Supreme Court that may be dispositive of the economic loss rule argument raised by the defendants. On August 17, 2017, the Utah Supreme Court agreed to answer the following question: "Does Utah's economic loss rule apply to a fraudulent inducement claim?" *HealthBanc International, LLC v. Synergy Worldwide, Inc.*, No. 2:16-cv-00135-JNP-PMW, Dkt. 101. The question of whether the economic loss rule precludes a fraudulent inducement claim is similar to the question of whether the economic loss rule bars the negligent misrepresentation claim at issue in this case. The answer to both questions turns on whether duties regarding pre-contract statements are independent of the obligations imposed by the contract. Because a forthcoming Utah Supreme Court opinion may definitively resolve the economic loss rule argument, the court denies the motion to dismiss as to this argument but does so without prejudice. The defendants may renew their economic loss rule argument in the event that the forthcoming Utah Supreme Court opinion suggests that this doctrine may bar a negligent misrepresentation claim.

## III. ARM'S-LENGTH EXCEPTION TO NEGLIGENT MISREPRESENTATION

The defendants also argue that the negligent misrepresentation claim fails as a matter of law because Utah recognizes an arm's-length negotiations exception to the negligent misrepresentation cause of action.[4] The defendants base this argument upon a federal district court ruling applying Utah law. In *Hafen v. Strebeck*, 338 F. Supp. 2d 1257, 1264–65 (D. Utah

---

[4] The defendants label this argument as an economic loss rule argument. But this contention is conceptually distinct from the economic loss doctrine.

2004), the district court examined whether a plaintiff may assert a negligent misrepresentation claim when the alleged misrepresentation occurs during the negotiation of an arm's-length contract. *Hafen* recognized that no Utah court had addressed this arm's-length exception. But upon examining cases applying the law of other states that recognized this exception, *Hafen* predicted that Utah courts would hold that parties negotiating an arm's-length contract have no duty to avoid negligent misrepresentations of fact. *Id.* at 1266.

Relying upon *Hafen*, the defendants contend that Paskenta's negligent misrepresentation claim should be dismissed because it likewise involves a misstatement made during the arm's-length negotiation of the Funds Agreement. This argument presents the difficult question of whether a federal court should apply a significant exception to a principle of state law without any indication that the courts of the state had or would adopt such an exception.

But the court need not address this thorny issue at this time. First, the Utah Supreme Court's forthcoming answer to the question of whether the economic loss rule bars claims based upon pre-contract representations may negate the need to address the arm's-length exception. Second, Paskenta alleges that it was not involved in an arm's-length negotiation. Paskenta asserts that Knee Centers Management owed it fiduciary duties as the managing member of Emere.

As the court noted at oral argument, it remains to be seen whether Paskenta and Knee Centers Management's relationship had soured to the point that Knee Centers Management's fiduciary duties had been partially suspended or extinguished. *See Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 454 (Utah 1993) ("[W]hen a relationship involving partners becomes adversarial and the partners deal at arm's length, their fiduciary duties to one another may be extinguished."); *see also Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1064 (Utah 1996) ("[W]hen the parties deal 'at arm's length' or in an adversarial relationship, no fiduciary

relationship can be said to exist."). But the defendants have not raised this argument, so the court has no occasion to second guess Paskenta's assertions of a fiduciary relationship at this stage of the litigation.

For these reasons the court denies the motion to dismiss to the extent that it raises the arm's-length exception to negligent misrepresentation. The court, however, does so without prejudice.

## IV.    BREACH OF FIDUCIARY DUTY

Paskenta alleges in its complaint that Knee Centers Management breached its fiduciary duties as the managing member of Emere by making misrepresentations of fact in the May 23 letter. "To prove a breach of fiduciary duty claim, a plaintiff must demonstrate that the defendant owed a duty, the defendant breached the duty, the plaintiff suffered damages, and the plaintiff's damages were actually and proximately caused by the defendant's breach." *Giles v. Mineral Res. Int'l, Inc.*, 338 P.3d 825, 827 (Utah Ct. App. 2014). The defendants argue that the breach of fiduciary duty claim should be dismissed because Paskenta later signed the Funds Agreement containing the non-reliance clause. This contention mirrors the defendants' argument that the non-reliance clause negates the reasonable reliance requirement for the fraudulent inducement and negligent misrepresentation claims. But the defendants have not shown that reasonable reliance is a necessary element of a breach of fiduciary duty claim. And even if it were, the court rejects the defendants' non-reliance clause argument for the same reasons articulated above.

Paskenta also alleges that Knee Centers Management breached its fiduciary duties by dissolving Emere without providing notice, distribution, or accounting. Citing Utah Code section 48-3a-409, the defendants argue that this claim also fails because Knee Centers Management had no fiduciary duty to do any of these things. The court disagrees. The statute provides that Knee

Centers Management had a duty of loyalty to "account to the limited liability company and to hold as trustee for it any property, profit, or benefit derived by the member in the conduct or winding up of the limited liability company's activities and affairs." UTAH CODE § 48-3a-409(2). Knee Centers Management had a duty to provide an accounting of assets and to fairly distribute them when it dissolved Emere. The complaint alleges that Knee Centers Management breached its fiduciary duties by failing to perform these obligations.

The court denies the motion to dismiss the breach of fiduciary duty claim.

## CONCLUSION

The court DENIES the defendants' motion to dismiss. With respect to the defendants' economic loss rule and arm's-length negotiations arguments, the court denies the motion without prejudice.

DATED January 22, 2018.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge